UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EL AMIN MUHAMMAD,

        Plaintiff,

                                    Case No. 1:23-cv-1306

v.

                                    Hon. Hala Y. Jarbou

CHRIS KING, et al.,

        Defendants.
_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants King, Winger, Martin, Clark, and Pilarski. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Chauvez, Schmidt, and Isabell: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory relief; and (3) Plaintiff's RLUIPA claims. Plaintiff's

personal capacity First Amendment free exercise and Fourteenth Amendment equal protection damages claims against Defendants Chauvez, Schmidt, and Isabell remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following LRF personnel in their official and personal capacities: Warden Chris King, Deputy Warden J. Winger, Assistant Deputy Warden Maxwell Martin, CPC/LTA Director P. Isabell, Captain J. Pilarski, Lieutenant Unknown Chauvez, Sergeant Unknown Clark, and Corrections Officer Unknown Schmidt.

Plaintiff is Muslim and adheres to the belief that he is required to wear a kufi. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that on January 17, 2023, Defendant Chauvez ordered Defendant Schmidt to confiscate kufis and issue misconduct reports to anyone entering the chow hall wearing a kufi. (*Id.*) That day, Defendant Schmidt stopped three inmates wearing kufis, confiscated them, and issued misconduct reports. (*Id.*) Plaintiff alleges that he removed his kufi and replaced it with a winter hat "out of fear" of receiving a misconduct report and experiencing "further harassment." (*Id.*)

Plaintiff asked Defendant Schmidt why this was happening, and Defendant Schmidt replied, "I'm ordered to do so by my superiors." (*Id.*) Plaintiff asked Defendant Schmidt if he was aware that he was violating federal law. (*Id.*) Plaintiff was told to file a grievance. (*Id.*) Plaintiff also asked Defendant Schmidt why Jewish inmates were not being told that they could not wear

2

their yarmulkes. (*Id.*) Defendant Schmidt replied, "They are in a different situation than you." (*Id.*) He again told Plaintiff to write a grievance. (*Id.*, PageID.8.)

On January 18, 2023, Plaintiff wrote to Defendant King regarding the "religious harassment." (*Id.*) Plaintiff alleges that Defendant King "refused to respond and as a result the discriminatory action by his staff members has continued and no steps to be proactive were taken." (*Id.*) Plaintiff also wrote to Defendants Winger and Martin on January 18, 2023, but received no response. (*Id.*, PageID.8–10.)

On January 28, 2013, Defendant Clark interviewed Plaintiff regarding the grievance he wrote. (*Id.*, PageID.10.) Plaintiff states that Defendant Clark allegedly spoke to Defendant Chauvez, who told him that the only confiscated kufis were ones that were handmade and not store-bought, and that MDOC Policy Directive 05.03.150 did not authorize inmates "to fabricate a kufi and wear it." (*Id.*, PageID.11.) Plaintiff contends that there was no evidence to support Defendant Chauvez's assumption that the kufis were handmade. (*Id.*) The next day, Defendant Clark issued a response to Plaintiff's grievance, rejecting it based upon Defendant Chauvez's assertion. (*Id.*) According to Plaintiff, Defendant Pilarski signed off on that grievance response. (*Id.*, PageID.13.)

Plaintiff goes on to allege that on February 8, 2023, Defendant Isabell refused to take Plaintiff's photographs while Plaintiff was wearing a kufi and other religious items. (*Id.*, PageID.13.) When it was Plaintiff's turn, he took his kufi out of his jacket pocket, but Defendant Isabell told Plaintiff that he was not going to take his pictures if he wore "any religious items." (*Id.*, PageID.14.) When Plaintiff protested, Defendant Isabell told Plaintiff that he could try to get his money back from the store because he was not going to take Plaintiff's photo "like that." (*Id.*) When Plaintiff asked Defendant Isabell if he was aware that MDOC policy now allowed Muslims

3

to wear their kufis at any time and place, Defendant Isabell told Plaintiff that he did not care about the policy. (*Id.*) Plaintiff said that this was discriminatory, and Defendant Isabell told Plaintiff to leave before he got a misconduct ticket. (*Id.*)

Based upon the foregoing, Plaintiff asserts violations of rights under the First Amendment Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.16–17.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Free Exercise and RLUIPA Claims

Plaintiff asserts that the prohibition against wearing kufis violates his First Amendment free exercise rights, as well as his rights under RLUIPA.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d

5

1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious beliefs, and there is no doubt that wearing a head covering can constitute a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same

6

meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege facts that show his religious exercise has been substantially burdened.

### 1. Free Exercise

Here, Plaintiff contends that on January 17, 2023, Defendant Chauvez ordered Defendant Schmidt to confiscate kufis and issue misconduct reports to anyone wearing a kufi who entered the chow hall. (Compl., ECF No. 1, PageID.7.) Plaintiff saw Defendant Schmidt stop three inmates wearing kufis and issue misconduct reports. (*Id.*) Plaintiff alleges that he removed his kufi and replaced it with a winter hat "out of fear" of receiving a misconduct report and experiencing

7


"further harassment." (*Id.*) When Plaintiff asked Defendant Schmidt why this was happening, Defendant Schmidt responded, "I'm ordered to do so by my superiors." (*Id.*)

Plaintiff goes on to allege that on February 8, 2023, Defendant Isabell refused to take Plaintiff's photographs while Plaintiff was wearing a kufi and other religious items. (*Id.*, PageID.13.) When it was Plaintiff's turn, he took his kufi out of his jacket pocket, but Defendant Isabell told Plaintiff that he was not going to take his pictures if he wore "any religious items." (*Id.*, PageID.14.) When Plaintiff protested, Defendant Isabell told Plaintiff that he could try to get his money back from the store because he was not going to take Plaintiff's photo "like that." (*Id.*) When Plaintiff asked Defendant Isabell if he was aware that MDOC policy now allowed Muslims to wear their kufis at any time and place, Defendant Isabell told Plaintiff that he did not care about the policy. (*Id.*) Plaintiff said that this was discriminatory, and Defendant Isabell told Plaintiff to leave before he got a misconduct ticket. (*Id.*)

Taking Plaintiff's allegations in the light most favorable to him, the Court concludes that the threat of disciplinary sanctions from Defendants Chauvez, Schmidt, and Isabell could place sufficiently substantial pressure on Plaintiff to compel him to modify his behavior and violate his beliefs. Accordingly, Plaintiff's First Amendment free exercise claims against Defendants Chauvez, Schmidt, and Isabell may not be dismissed upon initial review.

Plaintiff also asserts First Amendment free exercise claims against Defendants King, Winger, Martin, Clark, and Pilarski premised upon either their failure to respond to Plaintiff's complaints or their rejection of Plaintiff's grievances. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts showing that Defendants King, Winger, Martin, Clark, and Pilarski encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff alleges only that they did not respond to his letters or that they denied his grievances, which is insufficient to impose liability. *See Shehee*, 199 F.3d at 300. For the foregoing reasons, Plaintiff fails to state cognizable First Amendment free exercise claims against Defendants King, Winger, Martin, Clark, and Pilarski, and such claims will be dismissed.

### 2. RLUIPA

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 563 U.S. 277 (2011);[1] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[2]

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In *Sossamon*, 563 U.S. at 277, the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

---

[1] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[2] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

As noted above, Plaintiff is suing Defendants in both their official and personal capacities. However, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *see also Heyward v. Cooper*, 88 F.4th 648, 656–57 (6th Cir. 2023) (declaring that the prisoner's RLUIPA claim was moot because the prisoner had "transferred facilities and 'his requests were directed specifically at' [the prior facility's] officials 'and were not targeted at' [the state department of corrections] 'programs as a whole.'") (quoting *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Kensu*)); *Colvin*, 605 F.3d at 289 (concluding that prisoner's requests for declaratory and injunctive relief under RLUIPA were moot because they were directed at the policies and procedures at a prior facility and not at the MDOC program as whole); *Cardinal*, 564 F.3d at 798–99 (concluding that prisoner's RLUIPA claims for declaratory and injunctive relief were rendered moot by his transfer to another facility); *Berryman v. Granholm*, 343 F. App'x 1, 4–5 (6th Cir. 2009) (same).

Here, Plaintiff claims that the alleged constitutional and statutory wrongs occurred during his incarceration at LRF. Plaintiff, however, is no longer incarcerated at LRF. Plaintiff is now incarcerated at JCF, and he has not alleged any facts to suggest that the prohibition against wearing kufis is an issue at JCF. Under these circumstances, Plaintiff has failed to allege sufficient facts to show a continuing violation of federal law, and thus, no basis exists for granting either injunctive or declaratory relief.

For all of the reasons set forth above, Plaintiff's RLUIPA claims against Defendants will be dismissed.

B.      **Fourteenth Amendment Equal Protection Claims**

Plaintiff also contends that the prohibition on wearing kufis violated his Fourteenth Amendment equal protection rights. For example, Plaintiff alleges that Jewish inmates were still permitted to wear their yarmulkes, and that Defendant Schmidt told Plaintiff that Jewish inmates were "in a different situation" than Muslim inmates. (Compl., ECF No. 1, PageID.8.) Plaintiff also contends that Defendant Isabell refused to take Plaintiff's photographs if he wore "any religious items" and that he did not care about the MDOC policy allowing Muslims to wear their kufis at any time or place. (*Id.*, PageID.13–14.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by religion, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, at all times, the threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class or has no rational basis.' ").

In light of Plaintiff's allegations, the Court concludes that he has set forth plausible Fourteenth Amendment equal protection claims against Defendants Chauvez, Schmidt, and Isabell. However, Plaintiff's Fourteenth Amendment equal protection claims against Defendants

King, Winger, Martin, Clark, and Pilarski fail for the same reasons set forth *supra* regarding Plaintiff's First Amendment free exercise claims against those Defendants. Accordingly, Plaintiff's Fourteenth Amendment equal protection claims against Defendants King, Winger, Martin, Clark, and Pilarski will be dismissed.

### C. Fourteenth Amendment Due Process, First Amendment Right to Petition, and First Amendment Right to Access the Courts

The facts Plaintiff alleges with regard to the conduct of Defendants King, Winger, Martin, Clark, and Pilarski are not sufficient to state a claim for violation of Plaintiff's First Amendment free exercise rights or his Fourteenth Amendment equal protection rights. But Plaintiff's general references to the First Amendment and Fourteenth Amendment in his complaint might be intended to raise other claims with respect to those Defendants. For example, it might be argued that the actions of Defendants King, Winger, Martin, Clark, and Pilarski in allegedly failing to adequately respond to Plaintiff's complaints violate Fourteenth Amendment Due Process rights, First Amendment rights to petition the government, or First Amendment rights to access the courts.

Any due process claim related to the Defendants' handling of Plaintiff's complaint necessarily fails because Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*,

13

No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, these Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by these Defendants' mishandling or rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, these Defendants' actions (or inactions) could not have barred Plaintiff from seeking a remedy for his complaints in the courts. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

14

For all of these reasons, Plaintiff has failed to state a claim against Defendants King, Winger, Martin, Clark, and Pilarski for any other violation of his First or Fourteenth Amendment rights.

### D. Official Capacity Claims

Finally, as noted above, the Court has determined that Plaintiff has set forth plausible First Amendment free exercise and Fourteenth Amendment equal protection claims against Defendants Chauvez, Schmidt, and Isabell. Plaintiff, however, has named those Defendants in both their official and personal capacities.

Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews*, 35 F.3d at 1049 . The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Accordingly, the Court will dismiss Plaintiff's official capacity claims for damages against Defendants Chauvez, Schmidt, and Isabell.

An official capacity action seeking declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). As discussed *supra*, however, Plaintiff is no longer incarcerated at LRF, and he fails to allege facts showing an ongoing violation of federal law by Defendants Chauvez, Schmidt, and Isabell. Therefore, Plaintiff may not seek relief under *Ex parte Young*. *See Ladd*, 971 F.3d at 581.

Accordingly, for the foregoing reasons, Plaintiff's official capacity claims will be dismissed in their entirety.[3]

---

[3] To the extent Plaintiff seeks declaratory relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above because whether relief is characterized as declaratory or injunctive, it is only "for purposes of prospective relief [that] a state official who violates federal law is 'stripped of his official or representative character'" under *Ex parte Young*. *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (quoting *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Ex parte Young*,

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendants King, Winger, Martin, Clark, and Pilarski will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Chauvez, Schmidt, and Isabell: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; and (3) Plaintiff's RLUIPA claims. Plaintiff's personal capacity First Amendment free exercise and Fourteenth Amendment equal protection damages claims against Defendants Chauvez, Schmidt, and Isabell remain in the case.

An order consistent with this opinion will be entered.

Dated: March 29, 2024                            /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE

---

209 U.S. at 159–160)). Plaintiff makes no claim against these Defendants for prospective declaratory relief.